### THE CONSOLIDATED ASSOCIATION *v.* COMEAU et al.

A partial payment by a debtor on an obligation interrupts prescription, being an acknowledgment of the debt. C. C. 3486. So where a debtor, who had executed a bond for the amount of a loan and mortgaged property to secure its payment, leases the mortgaged premises, stipulating in the act of lease that it shall not be affected by the death of the lessor, and that the lessee shall pay the debt out of the rent, a payment on the bond by the lessee will have the same effect in interrupting prescription as if made by the debtor himself; and this, whether the payment was made before or after the death of the lessor ; and where the heirs of the lessor have accepted his succession, they will be bound by the payment.

Where, pending an action by a mortgagee against the heirs of a mortgagor, who had accepted his succession, to enforce his claim against the mortgaged property and against the heirs personally, an attorney, who had appeared for the defendants, purchases a portion of the mortgaged property, the purchase will be a nullity as to the mortgagee. C. C. 2422, 2623. So far as the freedom from the mortgage, resulting from prescription or peremption, is concerned, the right purchased was a litigeous one. The naked title not being in litigation, the purchase of it was not illegal.

APPEAL, by plaintiffs and defendants, from a judgment of the District Court of Lafayette, *Overton,* J. *Magill* and *Simon,* for the plaintiffs. *Mouton* and *Brent,* for the defendants. *Brent* and *Voorhies,* intervenors, *pro se.* The judgment of the court was pronounced by

SLIDELL, J. The defendants are sued as the heirs and legal representatives of *Charles Comeau,* a stockholder of the bank, and his wife, upon a bond executed by them to the bank, for a loan under the charter. The bond is dated in March, 1830, and is payable in March, 1831.

A plea of prescription will be first considered. This suit was brought and service of citation was accepted by defendants, in January, 1846. As the bond was not a negotiable instrument, the shortest term of prescription applicable to it is that of ten years. We shall consider it with reference to that term, as the most favorable to the defendants. In doing so, we are not to be considered as expressing an opinion upon the point made by the plaintiffs, that the prescription of this obligation was taken out of the ordinary rule by the provisions of the charter of the bank, and more particularly the 6th section of the act of 19th February, 1828. The facts material to the enquiry, and which we consider as satisfactorily proved, are as follows :

The bond bears endorsements of payments on account in 1831 and 1835 ; and a further payment was made in July, 1836, by *Lastrapes, Desmare & Co.,* the factors of *Valery Veillon,* at his request. In August, 1827, *Charles Comeau,* with his wife, executed a notarial act of lease to *Vallery Veillon* and *N. D. Pellerin,* of a plantation and slaves, which he subsequently mortgaged to the Consolidated Bank, to secure his stock and loan. The act recites that *Comeau* intended to obtain a loan upon mortgage from the bank ; and one of the stipulations of the lease, which was for the term of fifteen years, and was not to be affected by the death of the parties, was that *Veillon* and *Pellerin* should pay the bank the amount of the loan, together with the interest accruing thereon, "in such manner, and by such instalments, as the said bank may require."

A partial payment by the debtor upon an obligation, interrupts prescription, being an acknowledgment of the debt. Civil Code, 3486. The payment by

*Veillon* was not a payment by a stranger, but by a party charged by *Comeau*, under the covenant, to pay the debt. It has, therefore, the same effect as though made by himself. But it is said that, whatever might have been the effect of the payment by *Veillon*, had it been made during the life of *Comeau*, it must be considered as ineffectual against his heirs. That he died before the payment, and the mandate, if any was given, expired thereby. The heirs accepted his succession, and were bound by his contracts. The debt to the bank became their debt, as the defendants admit. How are the covenants in the lease to be distinguished from other contracts made by the deceased? The covenants in the lease are not personal. The lease was binding on the heirs of both parties. The death of *Comeau* did not annul it. The lessees continued in possession to the full expiration of the term, which expired only in 1842. The lessees covenanted to pay the rent, in a certain manner, lawfully stipulated by the parties. One of the modes of payment was, the payment of the interest and principal to the bank. By the mortgage it was contemplated that the borrowers should have the privilege of paying by annual instalments of one thirteenth; and, as we have seen, the lease contemplated payment by instalments. It is impossible to separate this covenant from the other covenants, and to treat the others as heritable and this not. The authority, therefore, to make payments to the bank, did not cease with the death of *Comeau*, but, like the lease itself, survived, and was binding upon his heirs. The payment, therefore, being binding upon the heirs, and having been made within ten years, even from the date of maturity nominated in the bond, it interrupted prescription. Ten years had not elapsed from that interruption before the institution of this suit. The plea of prescription was, therefore, properly dismissed.

It remains to consider the rights of the intervenors, who are third possessors of a portion of the mortgaged property, and resist the hypothecary action of the plaintiffs.

A suit was instituted by the plaintiffs, in 1844, to enforce their claim against the heirs of *Comeau* personally, and also against the property mortgaged. In this suit the intervenors, attornies and counsellors at law, appeared for the defendants, and resisted the action, alleging the invalidity, and pleading the prescription and preemption, of the mortgage. On the 14th November, 1845, the heirs of *Comeau* and wife sold a portion of the mortgaged property to the intervenors, without warranty, and with a dispensation of the certificate of mortgage required by the 3328th article of the Code. On the 15th November, 1845, the suit was terminated by a judgment of non-suit, upon motion of the plaintiffs. In the present suit the intervenors appeared as counsel for the heirs, and a similar defence was made as in the previous suit. The two purchasers also presented a petition of intervention, in which they set up their title by the purchase of 14 November, 1845, alleged their possession under it, and consequent interest in the suit, united in the grounds of defence pleaded by the defendants, and pleaded specially prescription and the preemption of the mortgage by the failure to reinscribe it within ten years. Their prayer is, that the property purchased by them be declared to be unaffected by the mortgage, and that they be quieted in its possession. The court below gave judgment in favor of the plaintiffs, against the heirs; but sustained the intervention, and exempting the property purchased by the intervenors from the operation of the mortgage.

It is contended by the plaintiffs that, the purchase made by the intervenors can have no effect against the plaintiffs, because it involved a violation of articles

CONSOLIDATED
ASSOCIATION
v.
COMEAU.

2422, 2623 of the Civil Code. Article 2422 declares that " public officers connected with courts of justice, such as judges, advocates, attorneys, clerks, and sheriffs, cannot purchase litigious rights, which fall under the jurisdiction of the tribunal in which they exercise their functions, under penalty of nullity, and of having to defray all costs, damages and interest." Article 2623 defines a litigious right : " A right is said to be litigious whenever their exists a suit and contestation on the same." The intervenors reply that the case does not fall within the prohibition, because the title to the property is not in dispute. That the bank does not pretend to be the owner of the land, but merely claims a mortgage upon it.

The argument appears to us unsound. It conflicts with the fair intendment and spirit of the law. So far as the naked title to the land was concerned, there was, indeed, no litigation. But so far as the freedom from encumbrance was involved, the right purchased was litigious. It was, at the moment of the purchase, a litigated question, whether the mortgage was originally valid or invalid —whether it had, or had not, lost its effect by prescription, or the failure to reinscribe ? In this litigation the intervenors made themselves personal participants, and now renew it, resisting the bank's claim upon the same grounds which were then contested. The naked title they had a right to buy ; but so far as the question of encumbrance was involved, and so far as they avail themselves of their purchase to resist the claim of the plaintiffs, the purchase is a nullity, and can confer no rights.

It is, therefore, decreed that, the judgment of the District Court be reversed, so far as it sustains the intervention ; that the petition of intervention be dismissed ; that the costs of the intervention in the court below, and one-half of the costs thereof on this appeal, be paid by the intervenors ; that the property described in the act of sale executed by the heirs of Comeau to the said intervenors, by act before C. M. Olivier, notary, on the 14th day of November, 1845, whereof a copy is on record in this cause, be seized and sold to pay to the plaintiffs the sum of $8,460, with interest thereon at the rate of eight per cent per annum from the 16th March, 1838, until paid ; that the judgment rendered against the defendants be affirmed ; and that the defendants pay one-half of the costs of this appeal.